IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROLAND MACHER and SLUMLORD MILLIONAIRE LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 7:22-cv-00575 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| NETFLIX, INC., *et al.*, | ) ) ) | By:  Hon. Thomas T. Cullen United States District Judge |
| Defendants. | ) | |

Plaintiff Roland Macher is the author of a book titled *Slumlord Millionaire*, which he asserts he registered with the U.S. Copyright Office in 2016. Macher claims that, over the past several years, he pitched a "reality show" based on his book to various production companies, including Defendant Netflix, Inc. ("Netflix"), a web-based streaming video service that offers original programming. One such program is a documentary series called "Dirty Money," and in 2020 or 2021, Netflix released an episode of that series titled "Slumlord Millionaire." Although the episode shared the same title as Macher's book, the episode profiled Jared Kushner, the real-estate mogul and son-in-law of former President Donald J. Trump, and featured his rise from real estate heir to presidential advisor. In other words, the episode had nothing to do with Macher or his book, but Macher contends that Netflix "pirated" his idea and "script." As a result, he contends Netflix owes him $10 million.

Macher sued Netflix and several high-ranking executives of the company for copyright and trademark infringement. Because Macher has not proffered any facts whatsoever that would suggest, let alone establish, that this court has personal jurisdiction over the individual

defendants, their motion to dismiss will be granted. And because Macher's factual allegations come nowhere close to suggesting a violation of federal copyright or trademark law, his claims against Netflix will be dismissed on the merits.

## I. STATEMENT OF FACTS

Macher is the author of Slumlord Millionaire. According to the synopsis on the back cover of the book, it

> contains the accumulated knowledge and know-how of over four decades; the experiences of a 40-year veteran of the world of business and real estate. In Slumlord Millionaire, Spanky Macher helps you discern whether you've got what it takes, while walking you step by step through the ins and outs of the real estate industry, to your ultimate goal of success.[1]

According to Macher, "he owns the copy write and trademark to Slumlord Millionaire. A book and reality show that was registered with the U.S. Copyright Office in 2016." (Compl. p. 1 [ECF No. 1] [*sic* throughout].)

Defendant Netflix, Inc. is a "subscription streaming service" that Macher alleges "stole, used, developed, and marketed the exact same reality show based on Macher's book Slumlord Millionaire." (*Id.* at 1.) Although they are not mentioned by name anywhere in Macher's complaint, he has also included several Netflix executives as defendants: Reed Hastings, Netflix's Founder and Executive Chairman; Greg Peters, its co-Chief Executive Officer; Spence Neumann, its Chief Financial Officer; and Spencer Wang, Vice President for Finance

---

[1] The book is available on Amazon.com, and both its front and back covers are available to view. Slumlord Millionaire, Amazon.com, *available at* https://a.co/d/c4xQNFT (last accessed July 26, 2023). For the purposes of this Opinion, the information is shared for context only.

and Investor Relations (collectively "the executive Defendants").[2] (*See generally* ECF Nos. 18-1 through 18-4.)

As best as the court can discern, Macher self-published *Slumlord Millionaire* around 2016 and alleges that he received copyrights and trademarks for the book and a reality show based on it. But Macher does not allege any facts regarding the nature or contents of his book or the reality show. In 2017, he apparently developed a "web site . . . [that] provided another blueprint for Netflix to copy their own development" (Compl. p. 2), but Macher does not allege any of the content of the website, nor that anyone at Netflix ever accessed it (or were even aware of its existence).

In 2018, Macher "attended Natpe in Maimi Florida. Which a international trade show for Showcasing new and exciting ideas for t v, streaming, and the movie business. Netflix Inc.s people game by Slumlord Millionaire's booth and received information including Machers book." (*Id.* p. 3 [*sic* throughout].) Macher alleges that he

> followed up on the show and did a blanket e mail to all producers, companies, directors, and media executives including Netflix Inc., with the reality show concept, a sizzle reel as well as the suggestion season programming. Tesha Crawford and Gabrielle Cristobal were two of the executives at Netflix Inc. that received the information Macher sent out.

(*Id.* [*sic* throughout].) Netflix never contacted Macher regarding his book or reality show concept. (*Id.*)

At some point in 2020 or 2021, Netflix released a series called "Dirty Money," and one of the episodes of that series was titled "Slumlord Millionaire." According to Macher, "Netflix,

---

[2] A fifth individual, Marc Randolph, the co-founder of Netflix, is named as a defendant as well, but is not a party to the motion.

Inc. though the direction and authority of their management team stole, used, developed, and marketed the exact same reality show based on Machers book Slumlord Millionaire. One of Netflix's shows featured Jared Kushner, in Dirty Money without Machers consent or authorization." (Compl. p. 1–2 [*sic* throughout].) Macher claims that "Netflix developed, marketed and distributed Machers [*sic*] book and reality show for a profit" in violation of his rights. (*Id.* p. 2.)

Macher filed suit in this court against Netflix and the executive defendants on October 6, 2022. Netflix filed a motion to dismiss, arguing that Macher's allegations fail to state a claim, and the executive defendants filed motions to dismiss for lack of personal jurisdiction and for failure to state a claim. (ECF Nos. 17 & 18.) The court dispensed with oral arguments because the parties' positions are well-stated in their written pleadings and argument would not aid the court in determining the issues raised in the defendants' motions.

## II.   STANDARD OF REVIEW

When a challenge to subject matter jurisdiction is raised under Rule 12(b)(1), "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* "The court must grant the motion 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Little v. Stock Bldg. Supply, LLC*, No.

4:10cv129, 2011 WL 5146176, at *3 (E.D.N.C. Sept. 2, 2011) (quoting *Richmond*, 945 F.2d at 768).

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

Because Macher is proceeding *pro se*, the court is obligated to review his complaint under a more lenient standard than would be applied to a pleading drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "[l]ike plaintiffs who are represented by counsel, a *pro se* plaintiff must still 'allege facts sufficient to state all the elements of [the] claim.'" *Brody v. N.C. State Bd. of Elections*, No. 3:10-cv-383, 2011 WL 1843199, at *4 (W.D.N.C. May 16, 2011) (quoting *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

A. Copyright Infringement

"Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "To prove copyright infringement, a plaintiff must show first that [he] owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of that work." *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996) (citing *Feist Pub'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

> To prove copying, a plaintiff may, of course, present direct evidence that the defendant copied the copyrighted work. However, if the plaintiff possesses no direct evidence of copying, he . . . can create a presumption of copying through indirect evidence by establishing that: (1) "the defendant had access to the copyrighted work;" and (2) "the defendant's work is substantially similar to the protected material."

*Levi v. Twentieth Century Fox Film Corp.*, No. 3:16cv129, 2018 WL 1542239, at *4 (E.D. Va. Mar. 29, 2018) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)).[3]

Even granting him the leniency afforded to a *pro se* party, Macher's complaint falls well short of plausibly alleging copyright infringement. As to the first element, Macher alleges that he owns a copyright. But he purports to bring this suit on behalf of *two* entities, and he doesn't say whether he or the LLC owns the copyright. If he does personally, then his allegations satisfy the first element.

But if the LLC owns the copyright, Macher is not the proper plaintiff. While he is free to represent himself in federal court, he cannot represent the LLC. *See, e.g., In re Under Seal,*

---

[3] Of course, at this stage, Macher doesn't need to prove anything; his allegations are presumed to be true. But those allegations must still "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

749 F.3d 276, 290 n.17 (4th Cir. 2014) (noting that, "[a]s a limited liability company" with only a single member, "Lavabit likely should not have been permitted to proceed pro se at all.").

> It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel. . . . Thus, save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654, providing that "parties may plead and conduct their own cases personally or by counsel," does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993); *see also United States v. Hagerman*, 545 F.3d 579, 581–82 (7th Cir. 2008) (holding that LLCs may not proceed *pro se*); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2nd Cir. 2008) (explaining that lay persons cannot represent corporations, partnerships, or limited liability companies). If he cannot represent the LLC, then without an attorney, the LLC's claims against the defendants cannot proceed.

Macher's allegations are also insufficient to satisfy the second element—that Netflix copied protected aspects of his book. Macher alleges, in conclusory fashion, that Netflix violated his copyright when they aired an episode of the show "Dirty Money" that shared the same title as his book. But it is well-settled that "titles are not copyrightable." *Comins v. Discovery Commc'ns, Inc.*, 200 F. Supp. 2d 512, 519 (D. Md. 2002); *see also* 37 C.F.R. § 202.1 ("The following are examples of works not subject to copyright . . . : (a) Words and short phrases such as names, *titles*, and slogans . . . ." (emphasis added)). And Macher's complaint is completely devoid of factual assertions giving rise to a plausible claim that *any* part of his book was copied for an episode of a show wholly unrelated to the book's topic. Although he alleges that he sent Netflix a "sizzle reel" that "they copied and used for their own show, Slumlord

Millionaire, without authorization or compensation to Macher" (Compl. p. 2), he does not allege that Netflix copied any part of his *protected* work, specifically, his book or his reality show "concept."

As it relates to his "sizzle reel," the court is at a loss to determine whether any part of it is protected by a copyright. Macher contends that he has a copyright for his reality show "concept" (assuming such a thing is copyrightable, since "[c]opyright protection does not extend to ideas," *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 142 (4th Cir. 2000)), but the court is left to guess as to the relationship between his concept for a reality show based on a how-to book about the "ins and outs of the real estate industry" and a Netflix documentary sharing its (uncopyrightable) title and having a tangential connection to the real-estate industry. These facts, taken as true, do not come close to alleging copyright infringement. As such, Macher has failed to state a claim in Count 1, and that claim will be dismissed.

B. <u>Trademark Infringement</u>

To prevail on a trademark-infringement claim under the Lanham Act,

> the trademark holder must prove: (1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse customers.

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (cleaned up); *see generally* 15 U.S.C. § 1051, *et seq.* In a trademark-infringement action, the ultimate question is "whether there exists a 'likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or

indeed simply confused, as to the source of the goods in question.'" *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (cleaned up).

Ordinarily, "the title of a single expressive work may receive trademark protection only upon a showing that the title is not generic, and that it has acquired secondary meaning." *Heirs of Estate of Jenkins v. Paramount Pictures Corp.*, 90 F. Supp. 2d 706, 711 (E.D. Va. 2000). "A mark has secondary meaning when, 'in the mind of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Id.* at 712 (quoting *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996) (cleaned up)). "It follows from this general principle that the title of a single expressive work has secondary meaning when 'the title is sufficiently well known that consumers associate it with a particular author's work.'" *Id.* (quoting *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989)).

Based on the applicable law, Macher's complaint falls well short of stating a claim for trademark infringement. First, as it relates to the general elements of such a claim, Macher has not alleged any facts that would suggest a likelihood of confusion between his book and an episode of a Netflix show. And insofar as Macher claims that the title of his book is subject to trademark, nothing in his complaint suggests that its title has obtained "secondary meaning," nor does he allege that it has.

For these reasons, Macher's claim for trademark infringement must be dismissed against Netflix.

C. <u>Personal Jurisdiction</u>

The executive Defendants have moved to dismiss Macher's complaint for lack of personal jurisdiction. It is well-settled that a party must have "minimum contacts" with the

forum state before the court may properly exercise its power over the individual, *Internat'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and when personal jurisdiction is challenged, the burden is on the plaintiff to establish it, *Richmond*, 945 F.2d at 768. Here, Macher's complaint lacks any allegation that the executive Defendants have any connection whatsoever to Virginia; Macher does not allege that they live in Virginia, work in Virginia, own property in Virginia, or conduct business, pay taxes, or even visit Virginia.[4] Even accepting everything in the complaint as true, the court has no basis to exercise personal jurisdiction over the executive Defendants. Their motion to dismiss will be granted as well.

## IV. CONCLUSION

Macher's complaint is deficient in many respects, both as to the basics of liability and as to the specifics of the claims he asserts. Because it lacks the necessary factual allegations to raise his right to relief above the speculative level, Netflix's motion to dismiss will be granted. And because Macher has not put forth any basis to invoke the court's jurisdiction over the executive Defendants, their motion to dismiss for lack of personal jurisdiction will be granted as well.[5]

---

[4] Affidavits filed by the executive Defendants—which the court may consider and which Macher has not contested—confirm that they have no contact with Virginia that would support the exercise of personal jurisdiction over them in this suit. (*See* ECF Nos. 18-1 thru 18-4.)

[5] Macher also sued Marc Randolph, the "founder" of Netflix. Macher filed a proof of service as to Randolph indicating that he was served "via Certified Mail" on January 27, 2023. The court doubts that this method of service is valid. *See* Fed. R. Civ. P. 4(e). But in any event, Randolph is not a party to the executive Defendants' motion to dismiss, so he will remain a party to this action.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of July, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE